EXHIBIT A

EXHIBIT A

EXHIBIT A

Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ALLIANZ GLOBAL CORPORATE & SPECIALTY**
as subrogee of ABEC INC.,

                    **Plaintiff,**

    **v.**

**M/V SAUDI HOFUF, her engines, boilers, etc.,**
**M/V SAUDI DIRIYAH, her engines, boilers, etc.,**
**M/V SAUDI ABBA, her engines, boilers, etc.,**
**THE NATIONAL SHIPPING COMPANY OF**
**SAUDI ARABIA,**
**AGILITY PROJECT LOGISTICS, INC, and**
**DP WORLD LIMITED,**

                    **Defendants.**

**11 CIV 7221 (PAC)**

**ECF CASE**

---

**MEMORANDUM OF LAW SUBMITTED BY**
**DEFENDANT DP WORLD LIMITED IN**
**OPPOSITION TO PLAINTIFF'S MOTION TO**
**AMEND THE COMPLAINT AND IN SUPPORT OF**
<u>**DP WORLD'S MOTION FOR SUMMARY JUDGMENT.**</u>

# Table of Contents

FACTUAL BACKGROUND ........................................................................................ 1

POINT I
PLAINTIFF'S MOTION TO AMEND THE COMPLAINT
SHOULD BE DENIED ON THE BASIS OF FUTILITY ................................................. 3

POINT II
PLAINTIFF HAS NO MERITORIOUS CLAIMS
AGAINST DP WORLD FZE AND DP WORLD JEBEL ALI ........................................ 7

POINT III
PLAINTIFF'S CLAIMS ARE NOW UNTIMELY AGAINST DP WORLD UAE REGION FZE .................... 8

POINT IV
ANY CLAIMS PLAINTIFF MAY HAVE AGAINST DP WORLD UAE REGION FZE
ARE NOT SAVED BY THE "RELATION BACK" PROVISION OF FED.R.CIV.P. 15 .......................... 12

POINT V
THE COMPLAINT SHOULD BE DISMISSED AS AGAINST DP WORLD LTD. SINCE IT IS
JUST A HOLDING COMPANY WITH NO INVOLVEMENT IN HANDLING THE CARGO AT
ISSUE AND SINCE IT IS NOT SUBJECT TO PERSONAL JURISDICTION ........................................... 18

    A.  No claim on the merits against DP World Ltd. ................................................. 18

    B.  Lack of personal jurisdiction over DP World Ltd. ........................................... 19

CONCLUSION ........................................................................................................ 23

Defendant DP World Ltd. submits this memorandum of law in opposition to plaintiff's motion pursuant to Rules 15 and 20 of the Federal Rules of Civil Procedure to obtain leave to amend the Complaint to add three defendants.  In addition, DP World Ltd. submits this memorandum in support of its own cross-motion pursuant to Rules 12 and 56 to obtain dismissal of the Complaint as against it for failure to state a claim on which relief can be granted and for lack of personal jurisdiction.

## FACTUAL BACKGROUND

Plaintiff Allianz Global Corporate & Specialty, an insurer, filed this action to recover for alleged damage to stainless steel tanks or vessels to be used in the manu-facture of insulin at a facility being constructed in the United Arab Emirates.  *See* Complaint, Heard declaration, Exh. A.  On various dates in September, October and November 2010, the tanks were loaded at Baltimore and Houston on ships belonging to defendant The National Shipping Company of Saudi Arabia ("NSCSA") for ocean carriage to the port of Jebel Ali, U.A.E.[1]  NSCSA issued four different bills of lading for the shipments, which contain the terms and conditions of trans-portation, including various defenses and limitations of liability.  *See* Heard decl., Exhs. C-G. Plaintiff contends that the tanks were in good order and condition when delivered to NSCSA at the ports of loading but were in a damaged condition when received at the Julphar Insulin Project in the U.A.E.  *See* Complaint, Heard decl., Exh. A.

DP World Limited has been sued on the basis that it provides "terminal operations, cargo handling, and stevedoring services, and handled, discharged, de-stuffed, and/or unloaded

---

[1] These ships are the *in rem* defendants SAUDI HOFUF, SAUDI DIRIYAH and SAUDI ABHA.

the shipments at issue" at the port of Jebel Ali, U.A.E.  Complaint at ¶ 6.  However, that is

incorrect.  As DP World Ltd. pleaded in its Answer, it "is simply a holding company that did not

perform any services for any of the other parties to this action and did not perform any services

or handling with respect to any of the cargo at issue in this action."  Heard decl., Exh. B, ¶ 58.

This is confirmed by the accompanying declaration of Olivier Schwartz, the Senior Vice

President and General Counsel of DP World Ltd.  Mr. Schwartz also sets forth facts explaining

that DP World Ltd. conducts its business outside the United States and that it is not subject to

personal jurisdiction in New York.  Accordingly, DP World Ltd. contends the Complaint should

be dismissed as against it for failure to state a claim on which relief can be granted and for lack

of personal jurisdiction.

Aware of DP World Ltd.'s position, plaintiff has moved to amend the Complaint to add

DP World Jebel Ali, DP World UAE Region FZE, and DP World FZE as defendants.  DP World Ltd.

contends plaintiff's motion should be denied because (a) DP World FZE is also just a holding

company, (b) DP World Jebel Ali is not a legal entity of any kind, and (c) while DP World UAE

Region FZE was the actual stevedore and terminal operator at Jebel Ali, the claims set forth in

the Complaint are time-barred, as against it, on the basis of a one year time for suit provision in

the NSCSA bills of lading pursuant to which the cargo was transported and delivered.   DP World

Ltd. further contends that plaintiff's attempt to add DP World UAE Region FZE as a defendant is

not saved by the "relation back" provision found in Rule 15(c)(1) of the Federal Rules of Civil

Procedure.  Accordingly, DP World Ltd. contends plaintiff's motion should be denied in its

entirety.

**POINT I**

**PLAINTIFF'S MOTION TO AMEND
THE COMPLAINT SHOULD BE DENIED
<u>ON THE BASIS OF FUTILITY.</u>**

While it is true that leave to amend should be granted in many cases, that does not

mean the concept of granting leave to amend is without limits.  Wright & Miller have addressed

this issue as follows:

> The liberal amendment policy prescribed by Rule 15(a) does not mean
> that leave will be granted in all cases.  Indeed, the text of the rule makes
> it clear that permission to amend is not to be given automatically but is
> allowed only "when justice so requires."

6 Wright & Miller, Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2011).  In a similar vein, the Court in

*Klee v. Pittsburgh & W.V. Ry. Co.*, 22 F.R.D. 252, 255 (W.D. Pa. 1958), noted that "[t]he

requirement of judicial approval suggests that there are instances where leave should not be

granted."  More specifically, the Supreme Court observed in the oft-cited case of *Foman v.

Davis,* 371 U.S. 178, 182 (1962), that "undue delay, bad faith, or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an

amendment prior to trial.  *Accord: Dougherty v. Town of North Hempstead Bd. of Zoning

Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.

1991).

This Court has also recognized that "futility" can be a bar to granting leave to amend a

Complaint.  For example, in *Miller v. Holtzbrinck Publishers, LLC*, No. 08 Civ. 3508, 2008 WL

4891212 at *5 (S.D.N.Y. Nov. 11, 2008), it was stated that "[c]ourts should deny leave to amend

when a claim is 'clearly frivolous or legally insufficient on its face.' *Ruiz v. Suffolk County Sheriff's Dep't,* No. 03 Civ. 3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (citing *Blaskiewicz v. County of Suffolk.* 29 F.Supp.2d 134, 138 (E.D.N .Y. 1998))."   Likewise, in *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp.2d 281, 298 (S.D.N.Y. 2000), the Court wrote as follows:

> Leave to amend may be denied where it appears that the proposed amendments are "unlikely to be productive." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see also Kaster v. Modification Sys., Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984) ("That the amendments would not serve any purpose is a valid ground to deny a motion for leave to amend.").  Thus, if the proposed amended complaint would be subject to "immediate dismissal" for failure to state a claim or on some other ground, the Court will not permit the amendment. *Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999).

*Accord: Elliott Associates, L.P. v. Hayes*, 141 F.Supp.2d 344, 361 (S.D.N.Y. 2000), *aff'd w/o opinion*, 26 Fed.Appx. 83 (2d Cir. 2002)("Futility provides a solid ground on which to deny leave to amend.").

Futility may bar a proposed amendment whether it relates to adding additional causes of action or additional parties.  With respect to additional causes of action, the Court in *Kandel v. Smoker*, 783 F.Supp. 948 (D.Md. 1991), denied plaintiff's motion to amend the Complaint to add a claim for punitive damages under Maryland law.  The Court concluded that plaintiff's allegations were "insufficient" to support a claim for punitive damages because Maryland law required "wanton or reckless disregard for human life" in an automobile accident case and it was clear the facts alleged by plaintiff could only support a claim of negligence. *Id.* at 951-52. Likewise, in *Elliott Associates, L.P. v. Hayes*, 141 F.Supp.2d 344, this Court denied leave to

amend a securities-fraud Complaint on futility grounds, when the claim arose from the breach of a stock-conversion agreement, thus requiring a showing of secret intent to defraud at the time of the agreement, and the agreement explicitly contemplated breach, precluding a finding of secret intent.

In other cases, futility resulted in the denial of motions to amend to add parties to lawsuits.  For example, in *Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y. 1974), a class action, the Court denied plaintiffs' motion to amend their Complaint to change the membership of the proposed class.  The amendment would have added to the class all investors who purchased the securities of a particular company (Omega-Alpha) within a designated period of time.  In denying the motion, the Court wrote as follows:

> Where plaintiff's proposed amendment advances a claim or defense that is legally insufficient on its face or otherwise clearly without merit, this court has denied leave to amend.  *Christophides v. Porco*, 289 F.Supp. 403, 408 (S.D.N.Y.1968); *Johnson v. Partrederiet Brovigtank*, 202 F.Supp. 859, 867 (S.D.N.Y.1962); 6 Wright and Miller, *supra*, § 1487.
>
> **We think that it would be equally futile for a plaintiff in a class action to amend the complaint such that the proposed amendment would, on its face, violate class action requirements, and that in such a case, leave to amend should be denied.** In this case, since neither named plaintiff is a purchaser of Omega-Alpha shares, neither can represent the Omega-Alpha investors whom plaintiffs propose to add to the class.  *Bailey v. Patterson*, 369 U.S. 31, 32, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Price v. Skolnick*, 54 F.R.D. 261, 263 (S.D.N.Y.1971) (plaintiffs not permitted to represent purchasers of stock in particular subsidiaries where plaintiffs purchased only shares of parent and other subsidiaries); *Bluestein v. Friedman*, CCH Fed.Sec.L.Rep. ¶92,558 (S.D.N.Y.1970) at 98,944."

64 F.R.D. at 543 (emphasis added).  As the Court put it, "the amendment seems futile in that it is inconsistent with plaintiffs' class allegations."  *Id.*

In *Tri-State Judicial Services, Inc. v. Markowitz*, 624 F.Supp. 925 (E.D.N.Y. 1985),

plaintiff's motion to amend the Complaint to add one defendant's wife and a corporation as

additional parties and to assert claims for fraud and conversion was denied.  The Court

concluded it lacked personal jurisdiction under the New York long-arm statute over the wife of

one defendant.  Thus, "granting leave to amend would be futile because of a lack of *in*

*personam* jurisdiction." *Id.* at 932.  With respect to the other party to be added, it turned out

that the corporation had been dissolved the year before the motion was made, was not a party

to the contract for the alleged breach of which plaintiff sought to recover and "there is no

showing that a New York court has *in personam* jurisdiction over" the corporation. *Id.*  Thus,

the motion to amend to add the corporation as a defendant was also denied. *See also*, *Adkins*

*v. Labor Ready, Inc.*, 205 F.R.D. 460 (S.D.W.Va. 2001)(in action against a temporary employment

agency, motion to add temporary employers was denied because plaintiffs failed to state claims

against the employers, any claims were subject to binding arbitration, and any claims would be

barred by a release signed by the temporary workers); *Papadopoulos v. U.S.*, No. 08 Civ. 11256,

2010 WL 3155037 at *4 (S.D.N.Y. Aug. 9, 2010)(motion to amend the Complaint to name

certain "John Does" and to add an additional defendant was denied because the claim being

asserted was "clearly frivolous or legally insufficient on its face").

Finally, and most relevant of all, a motion to amend may be denied as futile if the claims

alleged in the Complaint (or to be alleged in an Amended Complaint) are barred by the

applicable statute of limitations.  Thus, in *Rodriguez v. City of New York*, 10 Civ. 1849, 2011 WL

4344057 at *6 (S.D.N.Y.  Sept. 7, 2011), this Court observed that "[w]here, as here, plaintiff

moves to amend to add a defendant beyond the statute of limitations period, the proposed

- 6 -

amendment is untimely and must be denied as futile unless it relates back to the date on which the original complaint was filed."

Thus, if the claims plaintiff has alleged in the proposed Amended Complaint will not lie against the parties to be added through the amendment plaintiff seeks, then the proposed amendment is clearly futile and should be denied on that basis.

### POINT II

### PLAINTIFF HAS NO MERITORIOUS CLAIMS AGAINST DP WORLD FZE AND DP WORLD JEBEL ALI.

As Mr. Schwartz points out in his declaration, proposed defendant DP World FZE is an operating company (as opposed to a holding company, like DP World Ltd.) but DP World FZE "does not own or operate a port, marine terminal or other cargo-handling facilities," except for a few operations "that are smaller than the Port of Jebel Ali." Schwartz decl., ¶ 3. Thus, DP World FZE "does not own or operate the marine terminal and cargo-handling facility at the Port of Jebel Ali, which . . . is operated by DP World UAE Region FZE." *Id.* In conclusion, he explains that DP World FZE did not "play[] any role in the 'handling, discharge, de-stuffing and/or unloading of the shipments' at issue in this lawsuit." *Id.* at ¶ 3. Given these facts, plaintiff clearly does not have a claim for DP World FZE for negligence (it owed no duty to plaintiff), breach of the warranty of workmanlike performance (it did not engage in the performance of any activity with respect to the cargo at issue) or bailment (it never had possession, custody or control of the cargo). Accordingly, it would be futile to add DP World FZE as a defendant.

Mr. Schwartz also explains that "DP World Jebel Ali" is not a corporation or other legal entity but is instead "just a designation that appears on the group's website for its operations in the Port of Jebel Ali, United Arab Emirates." *Id.* at ¶ 5. As with DP World FZE, it would be equally futile to add DP World Jebel Ali as a defendant in this action.

**POINT III**

**PLAINTIFF'S CLAIMS ARE NOW UNTIMELY
AGAINST DP WORLD UAE REGION FZE.**

DP World believes quite strongly that this is a case where "futility of the amendment" argues against its allowance.

Defendant NSCSA agreed to transport the cargo of plaintiff's assured from ports of loading in the United States to Jebel Ali.[2] NSCSA issued bills of lading for this carriage that covered the time from receipt of the goods at the ports of loading until their delivery at the port of discharge (i.e., Jebel Ali). Heard decl., Exhs. C-F. Thus, its bills of lading provide – in Clause 5(a), dealing with "RESPONSIBILITY" on a "Port to Port Shipment" – that "[f]or Goods to or from US Ports, the Carrier shall be liable from the time of [sic] the Goods are received at the loading port until the time the Goods have been delivered to the Merchant at the Port of Discharge (Box 12)." *Id.* at Exh. G.

"Merchant" is a defined term in the bill of lading's Terms and Conditions and so is "Sub-contractor," which "includes charterers, operators, and managers of Vessel, *terminal operators,*

---

[2] This is what is known as a "port to port" shipment. *Mitsui Marine & Fire Ins. Co., Ltd. v. Hanjin Shipping Co., Ltd.,* 2004 WL 1066798, 2004 A.M.C. 577, 581 (Ga. State Ct., Chatham Cty. 2004).

*stevedores*, rail operators and any independent contractor employed by the Carrier to perform this contract of carriage."  *See* Clause 1, "DEFINITION OF TERMS" (emphasis added).  *Id.*

Other provisions in the bill of lading's Terms and Conditions permit NSCSA, as Carrier, to sub-contract all or any part of the work required to move the goods from the place of receipt at the port of loading to the place of delivery at the port of discharge.  In particular, Clause 4, entitled "SUB-CONTRACTING," provides in part as follows:

> (a) The Carrier shall be entitled to substitute any Vessel or other means of transportation and to sub-contract on any terms the whole or any part of the carriage, *loading, unloading, storing, warehouse, handling and any and all duties whatsoever undertaking [sic] by the Carrier in relation to the Goods*.
>
> (b)  If any litigation or claim is brought against the Vessel owners, operators, managers, *or Sub-Contractor*, as defined in clause 1 above, employed by the Carrier to perform this contract of carriage, such a person shall be entitled to the defenses and limits of liability which the Carrier is entitled to invoke under this contract.

Heard decl., Exh. G (emphasis added).

The NSCSA bill of lading provides that "TRADES TO OR FROM THE UNITED STATES shall be subject to the United States Carriage of Goods by Sea Act of 1936 (hereinafter "COGSA"), Ch. 229, 49 Stat. 1207 (1936) formally codified at 46 USC 1300 et seq."  This bill of lading provision enures to the benefit of the entity NSCSA engages to discharge cargo under the bill of lading because that entity is a "Sub-contractor,"  as defined in the bill.  This is important because COGSA includes in its terms a one year time for suit provision as follows:

- 9 -

(6) Notice of loss or damage; limitation of actions

In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered . . . .

Section 3(6) of COGSA, Ch. 229, 49 Stat. 1207 (1936), Pub.L. No. 109-304, 120 Stat. 1485 (2006), reprinted in note following 46 U.S.C. § 30701 (formerly codified at 46 U.S.C. § 1300, *et seq.*).

DP World contends this statutory provision protects the company that acted as stevedore and marine terminal operator with respect to the cargo at issue through the operation of Clause 4 of NSCSA's bill of lading, the SUB-CONTRACTING clause, which provides that the Sub-contractor (defined in the bill of lading to include "terminal operators [and] stevedores") "shall be entitled to the defenses and limits of liability which the Carrier is entitled to invoke under this contract."  Heard decl., Exh. G.

Bill of lading provisions that extend the protections of the contract of carriage to sub-contractors such as terminal operators and stevedores have often been enforced by the Courts. *See, e.g., Bernard Screen Printing Corp. v. Meyer Line*, 464 F.2d 934 (2 Cir. 1972)(stevedore protected by COGSA's $500 package limitation pursuant to bill of lading provision protecting "all agents and independent contractors"); *Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc.*, 275 F.Supp. 76 (S.D.N.Y.), *aff'd per curiam*, 386 F.2d 839 (2d Cir. 1967)(stevedore protected by COGSA's $500 package limitation pursuant to bill of lading provision protecting "all agents and all stevedores and other independent contractors"); *EM Chemicals, Div. of EM Industries, Inc. v. S.S. Sloman Najade*, 670 F.Supp. 87, 89 (S.D.N.Y.

- 10 -

1987)(bill of lading provision extending the package limitation to agents and terminal operators was "perfectly proper").

Moreover, the position of the terminal operator and stevedore is buttressed in this case by other language in the NSCSA bill of lading terms and conditions – specifically, Clause 17, which provides, in pertinent part, as follows:

> 17.  TIME BAR:
>
> All liability whatsoever of the Carrier, Vessel Owners, operators, managers or Sub-Contractor, as defined in Clause 1, shall be discharged from all liabilities whatsoever unless suit is brought within one year from the date that the Goods have been delivered or when the Goods should have been delivered.

This provision applies to terminal operators and stevedores since, as previously indicated, "Sub-Contractor" is defined in Clause 1 of the NSCSA bill of lading to include "terminal operators [and] stevedores . . . employed by the Carrier to perform this contract of carriage."

The one year specified in the time for suit provisions in COGSA and in the NSCSA bill of lading began to run on the date the cargo was delivered.  In this action, the one year on the first shipment began to run on October 16, 2010, on the second and third shipments on November 15, 2010 and on the fourth and last shipment on January 4, 2011.  Heard decl., ¶ 6.  Thus, plaintiff's claims with respect to the four shipments were all time-barred as of January 4, 2012, over one month before plaintiff filed its motion to amend the Complaint.

Plaintiff included DP World Ltd. as a defendant in this action on the basis that DP World Ltd. was involved in the "handling, discharge, de-stuffing and/or unloading of the shipments" at issue in this lawsuit.   DP World Ltd. has shown that it was not so involved with the shipments

- 11 -

at issue and that the company that was involved, DP World UAE Region FZE, is now protected from suit because of the one-year time for suit provision set forth in the NSCSA bills of lading issued for the cargo and in COGSA, which has been made applicable to DP World UAE Region FZE through the provisions of the bills of lading.  Accordingly, any claim plaintiff may have against DP World UAE Region FZE is now time-barred.

**POINT IV**

**ANY CLAIMS PLAINTIFF MAY HAVE
AGAINST DP WORLD UAE REGION FZE
ARE NOT SAVED BY THE "RELATION BACK"
<u>PROVISION OF FED.R.CIV.P. 15.</u>**

Rule 15(c)(1) of the Federal Rules of Civil Procedure reads as follows:

(1) *When an Amendment Relates Back.*  An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1).

- 12 -

Since plaintiff seeks to change "the party or the naming of the party against whom a claim is asserted," the focus here is on Rule 15(c)(1)(C).  In order to satisfy the requirements of that portion of the rule, plaintiff must show that the parties to be added (i) "received such notice of the action that [they] will not be prejudiced in defending on the merits" and (ii) "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity."

Plaintiff's motion must be denied because it cannot show that DP World UAE Region FZE, the actual stevedore and terminal operator at Jebel Ali, had notice of this action during the 120 day period provided by Rule 4(m), which expired on February 10, 2012.  As Judge Castel noted in *Rodriguez v. City of New York*, 10 Civ. 1849, 2011 WL 4344057, at *7, "[t]he linchpin [of Rule 15(c)] is notice."  In *Rodriguez*, the motion to amend was denied because plaintiff could not demonstrate that the police officers to be added as defendants "received notice of the suit 'within the period provided by Rule 4(m)' so that they 'will not be prejudiced in defending the action on the merits'."  *Id.* at *7.  In this action, plaintiff filed its motion on February 10th but there is no evidence it has ever notified DP World UAE Region FZE that it has a claim against that company or that it seeks to proceed against the company in this action.

When a plaintiff merely misdescribes the defendant it had intended to sue and actually serves the party really intended to be named in the Complaint, it has been held that "that party certainly has knowledge of the misnomer and the quoted portion of the rule has been

- 13 -

satisfied."[3]  6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1498.3 (3d ed. 2011).  Thus, in *Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000), the Court held that a Title VII plaintiff, who named her defendant employer by an incorrect corporate name in the pleadings, was entitled to relief under Rule 15(c) when she moved promptly to amend to add the proper corporate defendant after the employer's president disclosed the problem by moving for summary judgment. However, in that case, the corporation received actual notice of the suit when the person serving as its president and general manager was served personally with the initial Complaint well within the time for service.   In addition, since the president and the corporation had participated in an unemployment-benefits hearing and an EEOC investigation, they knew that, but for the mistake as to the identity of the proper party, the action would have been brought against the corporation.

Likewise, "when plaintiff names an incorrect party but serves the person attempted to be sued, the latter is considered to have notice of plaintiff's mistake and the amendment will qualify under Rule 15(c)."  6A Wright & Miller, Fed. Prac. & Proc. Civ. at § 1498.3.  Thus, in *Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543 (D.Nev. 1981), plaintiff was allowed to amend the Complaint to add the partnership that owned the premises where her injury occurred, after she had initially sued the corporation that leased the premises, since she had served the proposed amended complaint within the period provided by Rule 4(m) on an individual who was both the president of the corporation and a general partner of the partnership.  Thus, the partnership had the notice required by Rule 15(c)(1)(C)(ii) within the requisite period.

---

[3] The portion of the rule quoted in the text of Wright & Miller § 1498.3 is from Rule 15(c)(1)(C)(ii) – i.e., "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

However, there is no evidence here that plaintiff served or otherwise notified DP World UAE Region FZE of the filing or pendency of this action, or of plaintiff's intent to seek leave to amend to add DP World UAE Region FZE as a party.  Accordingly, plaintiff cannot satisfy the notice requirement of Rule 15(c)(1)(C)(i).  Likewise, plaintiff's motion papers do not disclose how or why DP World UAE Region FZE "knew or should have known that the action would have been brought against it," Fed.R.Civ.P. 15(c)(1)(C)(ii), when it was not served with the Summons and Complaint or otherwise notified of the lawsuit.

The facts of this case are not similar to those in cases in which the doctrine of "relation back" normally applies.  In this case, plaintiff apparently *intended* to sue DP World Ltd. as one of the defendants.  There is no statement or argument in plaintiff's motion papers that plaintiff intended to sue another company but sued DP World Ltd. due to "a mistake," as required by Rule 15(c)(1)(C)(ii).  Only when DP World Ltd.'s counsel advised the Court at the Conference on February 8, 2012 that DP World Ltd. was not involved in the discharge, handling or delivery of the cargo did plaintiff say it wished to add other parties as defendants to the action.  However, plaintiff still does not know who the terminal operator is because it is seeking leave to add not one but three additional defendants.  As explained in plaintiff's memorandum of law in support of its motion to amend, plaintiff believes "DP World FZE, DP World Jebel Ali, and DP World UAE Region FZE acted as container terminal operators, cargo handlers, and/or providers of stevedoring services and discharged, unloaded, de-stuffed, and/or handled the subject cargo at the port of Jebel Ali."  Plaintiff's Memo of Law, p. 4.  Thus, this is not a case where plaintiff knew at the time it filed the Complaint who it wanted to sue -- in terms of who discharged, handled and delivered the cargo – but mistakenly sued someone other than the intended

company.  Rather, in this case, plaintiff *intended* to sue DP World Ltd. until it was advised that company had no involvement with the facts of the case and is now nominating additional parties in the hope that one or more of these companies is the party it should be suing.

In prior, similar cases, the Courts have denied leave to amend.  For example, in *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir. 1995), the Second Circuit concluded that "[Plaintiff's] amended complaint ... did not correct a mistake in the original complaint, but instead supplied information [plaintiff] lacked at the outset.  Since the new names were added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met."

In *Butler v. Robar Enterprises, Inc.*, 208 F.R.D. 621 (C.D.Cal. 2002), a former employee sued his former employer and several "John Doe" defendants, alleging race discrimination. Plaintiff then moved to amend the Complaint to substitute the employer's chief executive officer for a "John Doe" defendant.  The defendants opposed the amendment as futile on the basis that any claim against the company's CEO was at that point barred by the statute of limitations applicable to Title VII.  This required the Court to analyze the proposed amendment under Rule 15(c).

The defendants argued that plaintiff's lack of knowledge of the identity of the CEO at the time plaintiff filed the Complaint was not a "mistake concerning the identity of the proper party."  208 F.R.D. at 623.  Reviewing precedents – including the Second Circuit's decision in *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466 – the District Court acknowledged that "the

courts of appeal that have confronted the issue are in near-unanimity that lack of knowledge is

not a 'mistake'." 208 F.R.D. at 623. The Court then wrote as follows:

> [Plaintiff] Butler has made no showing that substituting [CEO] Hove for
> Defendant Doe I would be reasonably understood by Hove as a
> correction of a misidentification or misnomer. To the contrary, Butler
> acknowledges that he did not know the identity of Defendant Doe I until
> February 19, 2002, when Defendants disclosed the identity of Robar's
> Chief Executive Officer and owner of a majority interest in Robar to be
> Hove. This was nine months after Butler filed the Complaint.
>
> Butler's proposed amendment to substitute Hove as Defendant Doe I
> *does not relate back to the date of the filing of his Complaint, and thus is*
> *barred by the applicable statute of limitations.* As such, the proposed
> amendment is futile, and the court will deny Butler's Motion to amend
> his Complaint.

208 F.R.D. at 624-25. Likewise, in the present case, it was not until defendant's counsel advised

that DP World Ltd. was not the stevedore and terminal operator at Jebel Ali that plaintiff filed

its motion seeking leave to amend and, even now, plaintiff is uncertain of the identity of the

party to be sued. Since plaintiff simply cannot satisfy the requirements of Rule 15(c)(1), its

motion to amend should be denied.

- 17 -

## POINT V

### THE COMPLAINT SHOULD BE DISMISSED AS AGAINST DP WORLD LTD. SINCE IT IS JUST A HOLDING COMPANY WITH NO INVOLVEMENT IN HANDLING THE CARGO AT ISSUE AND SINCE IT IS NOT SUBJECT <u>TO PERSONAL JURISDICTION.</u>

### A.  No claim on the merits against DP World Ltd.

Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  The moving-party bears the initial burden of demonstrating the absence of a genuine dispute of fact on each material element of the claims asserted.  *See Celotex,* 477 U.S. at 323; *see also FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994).  The substantive law governing the suit identifies the essential elements of the claims asserted and therefore indicates which facts are material .  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56 (1986).  If the moving party carries its burden, the non-moving party must then "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e).  Mere allegations or denials from the pleadings will not be sufficient to defeat summary judgment; instead, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 256.  The court must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

It is clear from the accompanying declaration of Olivier Schwartz that DP World Ltd. is simply "a holding company that does not own or operate ports, marine terminals or other

cargo-handling or stevedoring facilities.  It has very few employees and none of them perform any terminal, cargo-handling or stevedoring functions."  Schwartz decl., ¶ 2.  In its role as a holding company, DP World Limited owns 100% of the stock of DP World FZE.  *Id.* at ¶ 3.  While DP World FZE is an "operating company," it "does not own or operate a port, marine terminal or other cargo-handling facilities," with the exception of a few operations which Mr.  Schwartz describes as "smaller than the Port of Jebel Ali."  *Id.*  Even more to the point, DP World FZE does not "does not own or operate the marine terminal and cargo-handling facility at the Port of Jebel Ali," which is instead operated by DP World UAE Region FZE.  *Id.*  In short, as Mr. Schwartz explains, DP World Ltd. did not "play[] any role in the 'handling, discharge, de-stuffing and/or unloading of the shipments' at issue in this lawsuit."  *Id.* at ¶ 4.

Since DP World Ltd. had nothing to do with the cargo of plaintiff's assured, the Complaint fails to state a claim against DP World Ltd. for which relief can be granted and should, therefore, be dismissed as against this defendant.  Fed.R.Civ.P. 12(b)(6).[4]  DP World Ltd. asserted this as the first affirmative defense in its Answer.  *See* Heard decl., Exh. B.

**B.  Lack of personal jurisdiction over DP World Ltd.**

Separate and apart from DP World Ltd.'s lack of any involvement with plaintiff's cargo is the fact that it is not subject to the Court's personal jurisdiction.

The plaintiff must always bear the burden of properly pleading and proving that the Court has personal jurisdiction over a defendant.  *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,*

---

[4] Although failure to state a claim is a ground for dismissal under Rule 12(b)(6), plaintiff has also moved for summary judgment since its papers include a factual declaration on which it relies.  *See* Rule 12(d).

84 F.3d 560, 566 (2d Cir. 1996); *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003); *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999).  Even in the early stages of a case, a *prima facie* showing of jurisdiction is required, and "conclusory non-fact-specific jurisdictional allegations" or a "legal conclusion couched as a factual allegation" will not be sufficient. *Jazini v. Nissan Motor Co. ., Ltd.,* 148 F.3d 181, 185-186 (2d Cir. 1998) (approving district court's dismissal for lack of personal jurisdiction, and denial of jurisdictional discovery). However, in the absence of jurisdictional discovery, or an evidentiary hearing, the plaintiff gets the benefit of favorable inferences with respect to its pleadings and opposing affidavits/evidence when the Court considers a motion to dismiss for lack of personal jurisdiction. *See*, *Metro. Life Ins.*, 84 F.3d at 566-567.

In maritime cases, the Court's personal jurisdiction will be governed by the law of the forum state. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 50 (2d Cir. 1991).  In addition, the Court must consider the due process restrictions of the U.S. Constitution.  See, *J. McIntyre Machinery, Ltd. v. Nicastro,* 131 S.Ct. 2780 (2011) (specific jurisdiction); *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846 (2011) (general jurisdiction).

Based upon the Supreme Court's recent ruling in *J. McIntyre Machinery*, it is now clear that the primary touchstone for determining specific jurisdiction cases is an evaluation of whether the defendant has engaged in conduct/contacts purposefully directed at the forum. In that ruling, the Court adopted Justice O'Connor's view from *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987), that "[t]he 'substantial connection'

- 20 -

between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State," and rejected the forseeability notions of the stream of commerce theory. *J. McIntyre Machinery*, 131 S.Ct. 2788-89.

With respect to the standards for general jurisdiction, the necessary contact allegations must establish that the defendant has engaged in forum-related conduct that is so "'continuous and systematic' as to render [the defendant] essentially at home in the forum State," *Goodyear Dunlop Tires*, 131 S.Ct. at 2851.  And, these requirements should be strictly applied.  *Metro. Life Ins.*, 84 F.3d at 566-567 ("Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test…").

In addition to the minimum contacts analysis, due process requires a reasonableness test. *Metro. Life Ins.*, 84 F.3d at 567 ("The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry."). "The Supreme Court has held that the court must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.,* citing *Asahi*, 480 U.S. at 113-14.

As noted above, the plaintiff's jurisdiction allegations in this case must fit the require-ments of the law of the forum, i.e., New York.  Under that law, general jurisdiction is the subject

- 21 -

of C.L.P.R. 301 and specific jurisdiction is encompassed by C.P.L.R. 302.  Given the state of the

plaintiff's jurisdictional pleadings, and the evidence submitted with this motion, it is evident

that there will not be any jurisdictional foothold under either section.  *See*, *Stemcor USA v.*

*Hyundai Merchant Marine Co., Ltd.*, 386 F. Supp. 2d 229, 233-234 (S.D.N.Y. 2005) (granting

motion to dismiss cargo claims against unloading stevedores and terminal for lack of personal

jurisdiction under C.P.L.R. 301 & 302).

      As Mr. Schwartz explains in his declaration, DP World Ltd. is a holding company based in

Dubai that "has very few employees."  Schwartz decl., ¶ 2.  DP World Ltd. "does not have an

office or place of business in New York, does not rent or lease property anywhere in the United

States and has no officers or employees resident in the United States."  *Id.*  Although the cargo

at issue was loaded on vessels in the United States, that activity occurred in Maryland and

Texas and, in any event, DP World Ltd. was not involved.  *Id.* at ¶ 4.  Accordingly, DP World Ltd.

contends that it lacks the necessary minimum contacts with the State of New York for the

assertion of personal jurisdiction over it in this action and that, as a result, the Complaint

should be dismissed as against it for that reason too.

**CONCLUSION**

**FOR THE REASONS STATED HEREIN,
DEFENDANT DP WORLD LTD. REQUESTS
THAT THE COURT DENY PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT TO ADD THREE
DEFENDANTS AND GRANT DP WORLD LTD.'S
CROSS-MOTION TO DISMISS THE COMPLAINT
AS AGAINST IT PURSUANT TO FED.R.CIV.P. 12
OR BY SUMMARY JUDGMENT
<u>PURSUANT TO FED.R.CIV.P. 56.</u>**

Dated:     New York, NY
           February 29, 2012

                              BURKE & PARSONS
                              Attorneys for Defendant
                              DP World Ltd.


                              By    /s/ Keith W. Heard

                                 100 Park Avenue
                                 New York NY  10017-5533
                                 (212) 354-3800
                                 heard@burkeparsons.com


Of Counsel:    Michael J. Walsh

- 23 -